IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| A.L.F. UNO S.P.A, INC., an Italian Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No. 06 C 2805 |
| LEON GAVARTIN, an individual, IZA GAVARTIN, an individual, IMPORT ENTERPRISES of ILLINOIS, INC., an Illinois corporation, and IMPORT ENTERPRISES, INC., a Michigan Corporation, | ) ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On May 18, 2006, Plaintiff A.L.F. Uno S.p.A. ("ALF") filed the present three-count Complaint alleging breach of contract, unjust enrichment, and account stated against Defendants Leon Gavartin, Iza Gavartin, Import Enterprises of Illinois, Inc. ("Import Illinois"), and Import Enterprises, Inc. ("Import Michigan") based on diversity jurisdiction. *See* 28 U.S.C. § 1332. Before the Court is Iza Gavartin's and Import Michigan's (the "Michigan Defendants") Motion to Dismiss ALF's Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] For the following reasons, the Court denies the Michigan Defendants' motion.

**BACKGROUND**

---

[1] On November 9, 2006, the Court denied Leon Gavartin's and Import Illinois' (the "Illinois Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 49-1.)

ALF is an Italian corporation with its principal place of business in Cordignana, Italy. (R. 1-1, Compl. ¶ 2.) ALF manufacturers and sells Italian furniture to buyers worldwide. (*Id.*) Import Michigan is a Michigan corporation with its principal place of business in Michigan. (*Id.* ¶ 4.) Import Michigan specializes in the sale of furniture. (*Id.*) Iza Gavartin is a citizen of the State of Michigan. (*Id*. ¶ 6.)

Prior to 1999, Defendants began purchasing furniture from ALF pursuant to an invoicing process. (*Id*. ¶ 13.) In early 2002, Defendants fell behind in their payments to ALF on outstanding invoices. (*Id.* ¶ 14.) ALF alleges that thereafter Defendants promised that they would pay ALF's outstanding invoices. (*Id.*) Further, ALF alleges that based on this promise, ALF maintained its business relationship with Defendants and continued to ship merchandise to them. (*Id.*) From October 2003 through March 2004, ALF issued various invoices to Defendants for the sale of furniture for which Defendants did not pay. (*Id.* ¶¶ 15-17.) Plaintiff attached the invoices that it issued to Defendants to the Complaint, and listed them in Paragraph 16 of the Complaint. (*Id.* ¶ 16.) Based on these invoices, ALF alleges that Defendants owe it $836,544.00. (*Id.* ¶ 17.)

**PROCEDURAL STANDARD**

A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction tests whether a federal court has personal jurisdiction over a defendant. *See* Fed.R.Civ.P. 12(b)(2). In ruling on a motion to dismiss pursuant to Rule 12(b)(2), the Court may consider matters outside of the pleadings. *Purdue Research Found. v. Sanofi-Synthlabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). When the Court determines a Rule 12(b)(2) motion based on the submission of written materials without holding an evidentiary hearing, the plaintiff must make a prima facie case of personal

jurisdiction. *Id.* at 782-83; *see also Central States v. Phencorp Reinsurance Co.,* 440 F.3d 870, 876-77 (7th Cir. 2006). The plaintiff bears the burden of establishing that personal jurisdiction exists. *Central States*, 440 F.3d at 876; *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir. 1997). In determining whether the plaintiff has met its burden, courts must resolve all factual disputes in plaintiff's favor. *Central States*, 440 F.3d at 878 (court reads complaint liberally, in its entirety, and with every inference drawn in plaintiff's favor).

## PERSONAL JURISDICTION STANDARD

### I. Illinois Long-Arm Statute

When the Court's subject matter jurisdiction is based on diversity of citizenship – as in the present matter – the Court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002). Accordingly, the Court looks to the Illinois long-arm statute that contains a "catch-all" provision allowing Illinois state courts to assert personal jurisdiction to the maximum extent permitted by the Illinois and United States Constitutions. *See* 735 ILCS 5/2-209(c); *see also Hyatt,* 302 F.3d at 714. While the United States and Illinois Constitutions do not contain the exact same due process guarantees, the Seventh Circuit explains that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt,* 302 F.3d at 715. As such, the Court may move directly to the federal constitutional inquiry, namely, whether exercising personal jurisdiction over the Michigan Defendants complies with federal due process protections. *Id.* at 714-15.

### II. Minimum Contacts

The federal test for personal jurisdiction requires that a defendant have minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citations omitted). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). This "purposeful availment" standard ensures that a nonresident defendant will not be forced to litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of the plaintiff. *Burger King v. Rudzewicz,* 471 U.S. 462, 474-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *see also Hanson,* 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State").

The Supreme Court has labeled two types of jurisdiction – general and specific – that minimum contacts can establish. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *see also Hyatt Int'l,* 302 F.3d at 713. General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia*, 466 U.S. at 416; *Hyatt Int'l,* 302 F.3d at 713. If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt Int'l,* 302 F.3d at 713. On the other hand, specific jurisdiction is a more limited assertion of jurisdiction and exists for controversies that "arise out of" or "relate to" defendants' forum

4

contacts. *Id.* Here, ALF contends that the Michigan Defendants are subject to both general and specific jurisdiction. Because the Court's analysis of general jurisdiction is dispositive, the Court need not determine whether specific jurisdiction applies.

**ANALYSIS**

I.  **General Jurisdiction**

ALF can establish general personal jurisdiction if the Michigan Defendants' business contacts are so continuous and systematic that Defendants could reasonably foresee being haled into an Illinois court. *See International Med. Group, Inc. v. American Arbitration Ass'n, Inc.,* 312 F.3d 833, 846 (7th Cir. 2002) (citing *Helicopteros,* 466 U.S. at 414-15). Such continuous and systematic contacts must be so extensive that the Michigan Defendants are essentially "constructively present in the state to such a degree that it would be fundamentally fair to require [them] to answer in an [Illinois] court in any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Purdue Research,* 338 F.3d at 787 (emphasis omitted). As the *Hyatt* decision explains in the context of business contracts, "negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing may indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Hyatt*, 302 F.3d at 716 (citing *Burger King,* 471 U.S. at 479). Other factors the Court considers when determining if a defendant's business contacts are continuous and systematic with the forum state include whether the defendant has a place of business or is licensed in the forum state, *see Helicopteros,* 466 U.S. at 416-17 (1984), whether defendant advertises or solicits business in the forum state, or if the defendant has a channel for providing advice to customers in the forum state. *Asahi Metal Indus. Co. v. Superior Ct. of Cal.,*

5

480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

### A. Import Michigan's Business Relationship With Import Illinois

Import Michigan and Iza Gavartin argue that the Court does not have personal jurisdiction over them because Import Michigan does not maintain an office, warehouse, or telephone numbers in Illinois; does not accept delivery of merchandise in Illinois; only makes a few sales in Illinois; and is not licensed in the State of Illinois. Despite the Michigan Defendants' arguments – some of which are not supported by the record – ALF has presented compelling evidence that Import Michigan and Import Illinois are not separate, distinct entities as Import Michigan contends. Instead, Import Michigan and Import Illinois are in essence one company run by a father and son.

#### 1. Shared Corporate History

Import Illinois and Import Michigan have a shared corporate history dating back to 1992 when Iza Gavartin first incorporated Import Illinois and served as the company's President and sole shareholder. (R. 60-1, Pls.' Resp. Mem., Ex. 7, Illinois Articles of Incorporation.) Further, Iza Gavartin testified that when his son, Leon Gavartin, got married in 2000, Iza transferred ownership of Import Illinois to his son. (*Id.,* Ex. 1, Iza Dep. at 49-50.) Iza Gavartin also testified that after this transfer of ownership, he ran the company and Leon managed Import Illinois. (*Id.,* Iza Dep. at 49-50.) Specifically, Iza Gavartin testified that after he transferred ownership to Leon, "nothing changed." (*Id.,* Iza Dep. at 49.)

#### 2. Wholesale and Retail Sales

Iza Gavartin further testified that he established a course of dealing with ALF whereby he purchased *all* of the furniture for both Import Michigan and Import Illinois. (*Id.*, Iza Dep. at 32-

33.) To that end, Leon Gavartin would call or fax his father with a list of furniture he wanted from ALF. (*Id.,* Iza Dep. at 36.) In fact, until sometime in 2003, Leon Gavartin placed orders for inventory with his father for ***all*** of the furniture that Import Illinois sold. (*Id.*, Iza Dep. at 27-29.) Iza Gavartin further testified that Import Michigan made no profit for purchasing furniture on behalf of Import Illinois. (*Id.*, Iza Dep. at 29-30.) In other words, Import Illinois paid "cost" for the furniture Import Michigan shipped to it. (*Id.,* Iza Dep. at 30-31.)

Similarly, William Weisberg, an independent sales representative for ALF, averred that on several occasions during 2002-2004, Iza Gavartin requested that ALF furniture orders for Import Michigan be sent to Import Illinois' warehouse in Northbrook, Illinois. (*Id.*, Ex. 5, Weisberg Aff. ¶ 9.) ALF has also presented evidence that Import Michigan regularly purchased furniture from the Illinois Defendants. (*Id.*, Ex. 1, Iza Dep. at 14-16, 19.) Thus, the evidence in the record reflects that the buying of furniture for both Import Illinois and Import Michigan was intertwined.

### 3. Financial Transactions

Other evidence that supports ALF's contention that Import Illinois and Import Michigan are essentially one entity includes the Michigan Defendants' admissions that they guaranteed a line of credit from Bank One to provide working capital for Import Illinois. (*Id.*, Ex. 9, Import Michigan Admis. ¶¶ 8-9.) This line of credit was secured by a guarantee against Import Michigan's assets and Iza Gavartin's personal assets. (*Id*. ¶¶ 8-9; Ex. 10, I. Gavartin Admis. ¶¶ 8-9.) Other evidence supporting Defendants' interconnected financial relationship includes the fact that when Import Michigan bought merchandise from Import Illinois, Leon Gavartin did not issue an invoice to his father. Instead, Iza Gavartin issued credit memoranda. (*Id.*, Iza Dep. at

7

70-71; Ex. 3, Credit Memo, Bates IEM 000733, 000734.) Last, as discussed above, Leon Gavartin purchased furniture from Import Michigan for cost.

### 4. Representations

In addition, Iza Gavartin testified that when he met with representatives from furniture companies, he represented that he was purchasing furniture for both Import Michigan and Import Illinois as one company. (*Id.*, Iza Dep. at 42-43.) In fact, at his deposition, Iza Gavartin agreed with Plaintiffs' counsel that Import Michigan and Import Illinois were the "same" company. (*Id.,* Iza Dep. at 44.) Likewise, when Leon Gavartin met with a potential customer, Larry Slovy, in Illinois in 2002, he represented that he and his father had a substantial inventory of ALF furniture warehoused in both the Detroit and Chicago Areas. (*Id.*, Ex. 4, Slovy Aff. ¶¶ 4-6.)[2] Further, Leon Gavartin explained to Slovy that the operations in Chicago and Detroit were the same company, Import Enterprises. (*Id.*, Ex. 4, Slovy Aff. ¶ 5.) Based on his discussions with Leon, Slovy avers that he continued to buy ALF products from Import Illinois and Import Michigan assuming that they were a single business, Import Enterprises. (*Id.*, Ex. 4, Slovy Aff. ¶ 5.)

### B. Michigan Defendants' Sales & Solicitation of Business in Illinois

Moreover, ALF has presented evidence that Import Michigan directly sells furniture to customers in Illinois. As recently as Spring 2006, for instance, Iza Gavartin shipped a bedroom set to a customer in Illinois. (*Id.*, Ex. 6., Aviles Dep. at 65-67.) Indeed, the Michigan

---

[2] The Michigan Defendants argue that Larry Slovy's affidavit contains inadmissible hearsay, namely, statements made by Leon Gavartin. Any statements by Leon Gavartin, however, are non-hearsay because they are admissions of a party to this lawsuit. *See* Fed.R.Evid. 801(d)(2)(A).

Defendants admit that they have sold furniture in Illinois. (R. 23-1, Defs.' Mem. Mot. Dismiss, at 2; R. 70-1, Defs.' Reply Mem. at 7.)

Import Michigan also solicits business in Illinois. For example, Import Michigan's warehouse manager traveled to Chicago to teach employees at Harlem Furniture how to repair ALF furniture and for the purpose of building a commercial relationship. (Pls.' Resp. Mem., Ex. 5, Weisberg Aff. ¶ 10.) Defendants also solicit business by maintaining a single interactive website, which displays the inventory for both Import Illinois and Import Michigan. Although Iza Gavartin contends that the website is only for Import Illinois, ALF refutes this statement by providing a hard copy of the website which identifies the company name as "Import Enterprises, Inc." – Import Michigan's corporate name. (*Id*., Ex. 11, Website.) In fact, the domain name is Import Enterprises Inc. (www.importenterprisesinc.com) and the website directs potential customers to get information at info@importenterprisesinc.com. (*Id*.) The website, however, also directs customers to send inquiries to the Northbrook, Illinois address, which further supports ALF's contention that Import Michigan and Import Illinois are essentially the same company. (*Id*.) In addition, Effrain Aviles, who worked for Import Illinois, testified that the website for Import Enterprises was an "umbrella" for both Import Illinois and Import Michigan. (*Id.*, Ex. 6, Aviles Dep. at 32.) In sum, the website is an example of Import Michigan soliciting business in Illinois, substantiates ALF's contention that Import Illinois and Import Michigan are not separate entities, and also supports the *Asahi* factors that the Michigan Defendants advertise in Illinois and have established a channel for providing advice to customers in Illinois. *See id.* at 113.

  **C.**  **Other Contacts with Illinois**

ALF has presented additional evidence of Import Michigan's other contacts with Illinois, including Iza Gavartin's regular telephone calls and visits to Illinois. Although Iza claims that his visits are mainly personal in nature, he testified that his visits include trips to Import Illinois' warehouse in Northbrook, Illinois. (Pls.' Resp. Mem., Ex. 1, Iza Dep. at 26-27.) Iza specifically testified that when he goes to the warehouse, he looks around to see how it is organized and sometimes makes suggestions. (*Id.*, Iza Dep. at 27.) Also, Iza testified that he calls Leon in Illinois everyday – sometimes more than once per day – and that they discuss business at least once a week during these calls. (*Id.*, Iza Dep. at 55-56.)

There is also evidence in the record that in 2003, Iza and Leon Gavartin met with ALF representative, William Weisberg, in Chicago to discuss the terms of ALF's business relationship with Import Illinois and Import Michigan. (*Id.,* Iza Dep. at 39-40, Ex. 5, Weisberg Aff. ¶ 7.) Weisberg averred that at this meeting, the parties discussed ALF's continued business relations with Iza and Leon and the sales of ALF products in the Midwest region. (*Id.* ¶ 7.) Furthermore, Weisberg stated that he and Iza discussed the terms under which Iza and Leon would pay ALF's outstanding invoices going forward. (*Id*.)

### D. Conclusion

Resolving all factual disputes in ALF's favor, *see Central States*, 440 F.3d at 878, there is abundant evidence that Import Michigan and Iza Gavartin have minimum contacts with Illinois.[3] Put differently, the Court would be hard-pressed to concluded that these contacts were

---

[3] For the first time in their reply brief, the Michigan Defendants make an argument concerning Iza Gavartin's liability based on his individual capacity. Legal arguments made for the first time in a reply brief are waived because the nonmovant has had no chance to respond. *See Kelso v. Bayer Corp.,* 398 F.3d 640, 643 (7th Cir. 2005) (citing *Wilson v. Giesen,* 956 F.2d 738, 741 (7th Cir. 1992)).

random or based on ALF's unilateral activity. *See Burger King,* 471 U.S. at 475. Instead, the Michigan Defendants' continuous and systematic contacts with Illinois support the conclusion that the Michigan Defendants could reasonably foresee being haled into an Illinois court. *See Helicopteros,* 466 U.S. at 414-15. More specifically, because Import Illinois and Import Michigan are essentially the same entity, they are "constructively present in the state to such a degree that it would be fundamentally fair to require [them] to answer in an [Illinois] court in any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Purdue Research,* 338 F.3d at 787. Therefore, ALF has met its burden of establishing a prima facie case of personal jurisdiction.

## II. Traditional Notions of Fair Play & Substantial Justice

Even though ALF has met its burden, the Court must still ensure that the maintenance of this lawsuit does not offend "traditional notions of fair play and substantial justice." *Central States,* 230 F.3d at 943 (citing *International Shoe Co.,* 326 U.S. at 316). In other words, federal due process requires that the Court's exercise of personal jurisdiction over the Michigan Defendants is constitutionally reasonable. *See Burger King*, 471 U.S. at 476-78. In making this determination, the Court examines the burden on the Michigan Defendants, the judicial system's interest in efficiently resolving controversies, the forum's interest in adjudicating the dispute, and ALF's interest in obtaining effective relief. *See id.* at 476-77; *Asahi Metal Indus. Co.,* 480 U.S. at 113. Because the Michigan Defendants purposefully directed their activities to Illinois, they "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. Here, the Michigan Defendants failed to address this second due process inquiry. The Court nevertheless addresses

11

the reasonableness of exercising personal jurisdiction over the Michigan Defendants for the sake of completeness.

### A. Burden on Michigan Defendants

Because "'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Burger King,* 471 U.S. at 474 (quoting *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). Indeed, due to the Michigan Defendants' continued interaction with the Illinois Defendants and the State of Illinois, there is little, if any, burden on the Michigan Defendant's ability to defend this lawsuit in Chicago instead of Detroit. *See Dehmlow v. Austin Fireworks,* 963 F.2d 941, 945 (7th Cir. 1992).

### B. Judicial Efficiency

ALF brought the present three-count Complaint against Defendants Leon Gavartin, Iza Gavartin, Import Illinois, and Import Michigan based on diversity jurisdiction. Previously, the Court denied Leon Gavartin's and Import Illinois' Motion to Dismiss pursuant to Rule 12(b)(6). As such, it is in the interest of judicial economy that the Court exercise jurisdiction over all claims and Defendants in this lawsuit. *See Asahi Metal,* 480 U.S. at 113; *In re Oil Spill by the Amoco Cadiz,* 699 F.2d 909, 917 (7th Cir. 1983).

### C. Other Factors

In addition, Illinois has as a legitimate interest in resolving disputes involving companies that conduct business in the State of Illinois. Finally, ALF's interest in obtaining relief in this

forum is especially keen because ALF's claims against the Illinois Defendants are also before the Court.

In sum, exercising jurisdiction over the Michigan Defendants is reasonable, fair, and just, and thus does not offend "traditional notions of fair play and substantial justice." *See, e.g., Zurich Capital Mkts. v. Coglianese,* 388 F.Supp.2d 847, 859 (N.D. Ill. 2004).

## **CONCLUSION**

For these reasons, the Court denies Iza Gavartin's and Import Enterprises, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2).

Dated: January 25, 2007

ENTERED

**AMY J. ST. EVE**
**United States District Court Judge**